1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8    UNITED STATES OF AMERICA,           )
                                          )
9              Plaintiff,                 )
                                          )   No.  CR 09-1786-TUC-CKJ
10   vs.                                  )
                                          )
11   MARTHALENE GONZALES,                 )        **ORDER**
                                          )
12             Defendant.                 )
     _____)

13
         Pending before the Court is Defendant's Motion in Limine to Preclude Witness (Doc.
14
15   125) and Defendant's Motion to Dismiss Count One (Doc. 151).  Responses and replies have

16   been filed.  Argument was presented to the Court on December 20, 2010.  Also pending

17   before the Court is the relevance of drug testing as discussed in Defendant's Motion Suppress

     (Doc. 80).  The Court took this issue under advisement on September 17, 2010.
18

19
     *Factual and Procedural Background*
20
         Defendant Marthalene Gonzales ("Gonzales") is alleged to have been driving a
21
22   vehicle on October 18, 2004, when she passed out or fell asleep at the wheel.  When the

23   vehicle rolled, a child in the back seat was ejected from the vehicle and sustained a skull

     fracture.[1]
24
25       After the accident, Gonzales was conscious and able to respond to police questions.

26   The government has asserted that Gonzales admitted to Sergeant Miles that she had used

27

28       _____
         [1]Gonzales was driving the car with four minor passengers and one adult passenger at
     the time of the crash.

cocaine the night before the crash.  Gonzales was not arrested, but was subsequently taken to Kino Hospital, where she was treated and released.  The hospital tested Gonzales' urine for the presence of drugs.  The Kino Hospital urine test returned positive results for amphetamine/methamphetamine at levels at or exceeding 1000 ng/ml, and for cocaine at levels at or exceeding 300 ng/ml.

On August 19, 2009, Gonzales was indicted on two counts:

<u>COUNT 1</u>

On or about October 18, 2004, at or near the San Xavier Mission, on the Tohono O'odham Indian Nation in Indian Country, within the District of Arizona, the defendant, MARTHALENE GONZALES, an Indian, did assault [T.B.], an Indian, by knowingly driving a vehicle while intoxicated and under the influence of drugs including cocaine, Methamphetamine and Amphetamine, and in doing so crashed and rolled her vehicle, causing serious bodily injury to [T. B.], who sustained a skull fracture; in violation of Title 18, United States Code, Sections 113(a)(6) and 1153(a).

<u>COUNT 2</u>

On or about October 18, 2004, at or near the San Xavier Mission, on the Tohono O'odham Indian Nation in Indian Country, within the District of Arizona, the defendant, MARTHALENE GONZALES, an Indian, did knowingly or intentionally possess a controlled substance, to wit:  37 milligrams of cocaine wrapped and contained inside of her wallet; in violation of Title 21, United States Code, Sections 844(a).

August 19, 2009, Indictment (Doc. 1).  On July 21, 2010, a superceding indictment charged Gonzales with two counts:

<u>COUNT 1</u>

On or about October 18, 2004, at or near the San Xavier Mission, on the Tohono O'odham Indian Nation in Indian Country, within the District of Arizona, the defendant, MARTHALENE GONZALES, an Indian, did willfully, knowingly, and recklessly assault T.B., an Indian, by willfully and recklessly driving a vehicle causing serious bodily injury to T. B., in violation of Title 18, United States Code, Sections 113(a)(6) and 1153(a).

<u>COUNT 2</u>

On or about October 18, 2004, at or near the San Xavier Mission, on the Tohono O'odham Indian Nation in Indian Country, within the District of Arizona, the defendant, MARTHALENE GONZALES, an Indian, did knowingly or intentionally possess a controlled substance, to wit:  37 milligrams of cocaine wrapped and contained inside of her wallet; in violation of Title 21, United States Code, Sections 844(a).

July 21, 2010, Superseding Indictment (Doc. 84).

1    *Motion in Limine to Preclude Witness*

2          Gonzales seeks to preclude testimony from government expert witness Terrence

3    O'Hara ("O'Hara").  O'Hara is expected to testify regarding the signs and symptoms of

4    impairment by cocaine and methamphetamine, regarding the toxicological effects of those

5    two drugs, that a person will come down from the use of the drugs and may pass out or fall

6    asleep, regarding the depressant effects of the drugs on the human body, and that the

7    behavior and driving behavior of Gonzales was consistent with someone under the influence

8    of the substances.

9          Gonzales asserts that O'Hara is not an expert on the topics he proposes to testify

10   about, that O'Hara did not conduct an evaluation of Gonzales at or near the time of the

11   Defendant's driving, and that O'Hara's testimony is irrelevant to the charges.

12         The Federal Rules of Evidence provide when expert testimony may be appropriate:

13        If scientific, technical, or other specialized knowledge will assist the trier of fact to
          understand the evidence or to determine a fact in issue, a witness qualified as an
14        expert by knowledge, skill, experience, training, or education, may testify thereto in
          the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts
15        or data, (2) the testimony is the product of reliable principles and methods, and (3) the
          witness has applied the principles and methods reliably to the facts of the case.
16

17   Fed.R.Evid. 702.  When an objection to an expert's testimony is raised, the court must

18   perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence.  *Daubert*

19   *v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125

20   L.Ed.2d. 469 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct.

21   1167, 1175, 143 L.Ed.2d 238 (1999); *Elsayed Mukhtar v. California State University,*

22   *Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002), *amended en banc* at 319 F.3d at 1073 (9th

23   Cir. 2003).[2]  A trial court's gatekeeper duty requires two separate inquires:  the witness must

24   _____

25         [2]The Ninth Circuit has held that a trial court may make a determination as to a
     proposed expert's qualifications, the relevance of the testimony, and the reliability of the
26   testimony without a hearing.  *United States v. Alatorre*, 222 F.3d 1098, 1101-02 (9th Cir.
     2000).  Indeed, this latitude allows a trial court to decide what proceedings, if any, are
27   required to determine reliability.  *Alatorre*, 222 F.3d at 1103; *see also Hangarter*, 676 F.3d
     at 1018 (trial court satisfied gatekeeping duties by probing the extent of expert's knowledge

28

be qualified to offer the opinions he is espousing and the proponent of the witness bears the burden of proving that its witness' opinions are both relevant and reliable. *Kuhmo Tire*, 526 U.S. at 141, 152.

Gonzales argues that a drug recognition expert ("DRE") is generally dispatched to the scene of a traffic stop, at the request of another officer who is investigating a DUI, where the DRE examines the suspect for certain characteristics. The DRE will then make a determination of whether there is probable cause to arrest based on the suspected used of drugs; a suspect is then ordered to submit to a chemical test or tests which would conclusively establish the presence or drugs in the person's system. Gonzales points out that she was not arrested, nor did police conduct a field investigation relating to impairment. In other words, no one made an assessment of Gonzales' physical characteristics to determine if she was under the influence of alcohol or drugs at the time of driving.

Gonzales asserts that, because O'Hara has not submitted to an interview, counsel cannot fully address O'Hara's qualifications based on limited information provided in his resume. Moreover, Gonzales points out that the resume submitted by the government demonstrates that O'Hara does not have any qualifications in medicine, pharmacy, pharmacology, or toxicology, matters which O'Hara is expected to testimony regarding.

The government asserts that O'Hara has been with the Tucson Police Department for 13 years and has maintained his certification as a DRE for nine years. *See* Response, Attachment (Doc. 171-1). Moreover, the government points out that the note to the applicable rule states:

> Nothing in this amendment is intended to suggest that experience alone – or experience in conjunction with other knowledge, skill, training or education – may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. *See, e.g., United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997) (no abuse of discretion in admitting the testimony of a handwriting examiner who had years of practical experience and extensive training, and who explained his methodology in detail); *Tassin v. Sears Roebuck*, 946 F.Supp. 1241, 1248 (M.D.La.

and experience of expert in pre-trial rulings and during voir dire).

1    1996) (design engineer's testimony can be admissible when the expert's opinions "are

2    based on facts, a reasonable investigation, and traditional technical/mechanical

3    expertise, and he provides a reasonable link between the information and procedures

4    he uses and the conclusions he reaches"). *See also Kumho Tire Co. v. Carmichael*,
119 S.Ct. 1167, 1178 (1999) (stating that "no one denies that an expert might draw a
conclusion from a set of observations based on extensive and specialized
experience.").

5  Fed.R.Evid. 702. Advisory Committee Notes. Moreover, the government points out that an

6  expert opinion may be based upon facts or data; that O'Hara was not on the scene does not

7  affect the admissibility of his opinion.

8      A witness is "qualified as an expert by knowledge, skill, experience, training, or

9  education[.]" Fed.R.Evid. 702. An expert may testify "in the form of an opinion or

10  otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the

11  product of reliable principles and methods, and (3) the witness has applied the principles and

12  methods reliably to the facts of the case." *Kuhmo Tire*, 526 U.S. at 141, 152. Factors that

13  may be considered in determining reliability were set forth in *Daubert*: (1) whether the

14  theory can be (and has been) tested; (2) whether it has been subjected to peer review and

15  publication; (3) whether there is a high known or potential rate of error and whether there are

16  standards controlling the techniques' operation; and (4) whether the theory or technique

17  enjoys general acceptance within a relevant scientific community), and were made applicable

18  to non-scientific expert testimony, depending on the circumstances of a case, in *Kumho Tire*.

19      The *Daubert* factors, however, are generally not applicable to an expert whose

20  testimony is based on other specialized knowledge. Nonetheless, the Court must still

21  perform its gatekeeper duties, but wide latitude is afforded to the Court in determining

22  whether the expert testimony should be admitted and in determining how to test reliability.

23  *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004) (where

24  testimony is non-scientific, district court must make reliability determination to fulfill

25  gatekeeping duties); *United States v. Alatorre*, 222 F.3d 1098, 1101-02 (9th Cir. 2000);

26  *Merlen v. Dickinson*, 2010 WL 2650620 (E.D.Cal. 2010) (police officer with sufficient

27  qualifications can testify as an expert); *United States v. Nelson*, 285 Fed.Appx. 491 (9th Cir.

28  2008) (officer qualified as expert based on experience and training); *United States v.*

1  *Freeman*, 498 F.3d 893 (9th Cir. 2007) (officer was qualified to offer expert testimony based
2  on his experience).

3       The government points out that O'Hara has been with Tucson Police Department for
4  13 years and has maintained his certification as a drug recognition expert for nine years.
5  Moreover, the government asserts that O'Hara regularity testifies in Pima County Superior
6  Court as a DRE.  Further, DRE expert testimony has been offered in other courts regarding
7  the symptoms of drug impairment.  *See e.g. United States v. Fields*, 2009 WL 3029726 *8
8  (E.D.N.C. 2009); *Mares v. Voeltz*, 2002 WL 34450724 (C.D.Cal. 2002) (DRE permitted to
9  testify that cocaine use is manifested in certain ways and permitted to testify whether
10  observations of arresting officers were consistent with cocaine use)The Court makes a
11  preliminary finding that O'Hara, based on his law enforcement training and field experience,
12  is qualified as an expert to testify as a DRE.  Upon presentation of the expert's qualifications at
13  trial, the Court may reconsider this determination.

14       The Court must also make a determination that the evidence will be reliable.  The
15  district court is not to "evaluate the credibility of opposing experts and the persuasiveness
16  of competing scientific studies[.]"  *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*,
17  326 F.3d 1333, 1341 (11th Cir. 2003), *quoting Ambrosini v. Labarraque*, 101 F.3d 129, 141
18  (D.C.Cir. 1996).  The jury is entitled to hear expert testimony and decide whether to accept
19  or reject it after considering whether predicate facts on which the expert relied were accurate.
20  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (11th Cir. 2002).  Indeed, Defendant's
21  contradiction of the expert's proposed testimony may be established by cross-examination
22  (e.g., questions regarding specialized knowledge).

23       The Court makes a preliminary finding that the proposed testimony will be reliable,
24  subject to the presentation of the witness' qualifications and experience and Defendant's voir
25  dire of the witness.  *See Alatorre*, 222 F.3d at 1105 (district court did not abuse discretion
26  when it denied a Daubert hearing, but specified defendant would have opportunity to explore
27  relevance and reliability of proposed testimony).

28

1   Gonzales also asserts that the testimony is not relevant because an expert cannot

2   testify regarding a defendant's mental state or condition if that state or condition is an

3   element of the crime charged.  Fed.R.Evid. 704(b).  Specifically, Gonzales asserts that,

4   because the government has charged that Gonzales has committed the offense of aggravated

5   assault based on her mental state or condition, it would be improper to allow O'Hara to

6   testify that Gonzales's behavior was consistent with that of a person under the influence of

7   the substances.  However, based on his training and field experience, O'Hara can testify as

8   to the effects of drug use (i.e., "coming down" sleepiness, physical symptoms).[3]  The Court

9   preliminarily finds that O'Hara's testimony is relevant and reliable.  O'Hara's specialized

10  knowledge as outlined above will assist the jury "to understand the evidence or to determine

11  a fact in issue," *see* Fed.R.Evid. 702, given the government's allegation that the accident was

12  caused by Gonzales' impairment due to the ingestion of drugs.  Moreover, the Court finds

13  this testimony will be relevant and reliable whether the government proceeds with the

14  original indictment or the superseding indictment.[4]

15

16  *Motion to Suppress – Relevance of Drug Testing*

17  Related to the issue of the whether the testimony of O'Hara is relevant is the issue of

18  whether the evidence of chemical tests for the presence of drugs or alcohol is relevant.

19

20  _____

21  [3]For example, Gonzales argues that the experts have stated unequivocally that one
cannot conclude that, because drugs or metabolites are found in an individual's system, that

22  the individual still had some amount of drugs in her system, or that the individual was
"coming down" from the drugs, or even when the individual had ingested the drugs and that

23  there are too many variables involved to conclude with any degree of medical accuracy

24  whether the individual was under the influence of drugs, based on the presence of drugs in
their urine.  This, however, is an issue to be presented and argued to a jury rather than

25  precluding the witness; i.e., this argument goes to the weight of the evidence rather than its

26  admissibility.

27  [4]In other words, the testimony is relevant to whether Gonzales was knowingly driving
while intoxicated or under the influence of drugs and is relevant to whether Gonzales was

28  recklessly driving.

Gonzales argues that the evidence is not relevant to prove that Gonzales was under the influence of drugs.  Although evidence that Gonzales' urine contained illicit substances may not prove that she was under the influence of drugs, it is evidence that has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed.R.Evid. 401; *see also United States v. Dayea*, 32 F.3d 1377, 1379 & n. 1 (9th Cir.1994) ("We have previously held that drunk driving can support a conviction for assault resulting in serious bodily injury under § 113(a)(6), even without an intent to injure[.]"); *People v. Taylor*, 2003 WL 1564829 * 4 (Cal.App. 3 Dist. 2003) ("Evidence that defendant had ingested narcotics and appeared to be under the influence was relevant because it tended to prove that his violation of the speed laws was done in a dangerous manner and was grossly negligent.  Excessive speeding when one's judgment and reaction time is impaired by the consumption of narcotics is dangerous."); *Commonwealth v. Surina*, 438 Pa.Super. 333, 652 A.2d 400, 402-03 (Pa.Super. 1995), *citation omitted* ("While evidence of drinking alone is insufficient to establish [DUI], it most certainly may be considered in determining whether the appellant was driving while consciously disregarding a substantial and unjustifiable risk of injury to others.")

In light of the government's allegation that the accident was caused by Gonzales' impairment due to the ingestion of drugs, rather than a specific charge of driving under the influence by either exceeding a legal limit or by driving under the influence based on an impairment to the slightest degree, such evidence is relevant.

*Motion to Dismiss Count One*

During a September 7, 2010, hearing, experts testified that the most that could be said about the presence of drugs or metabolites in Gonzales' urine is that Gonzales ingested those drugs some time previously.  For example, cocaine may be found in the urine as long as twenty-four hours after it has been ingested, while with methamphetamine, the drug or metabolite can be found in the urine following ingestion after as long as six days.  The experts stated that even with the ingestion of cocaine within a twenty-four hour period, it

could not be said that Gonzales had that drug in her system. Government counsel indicated that she intended to prove that the use of the drugs produced a high followed by a period of "coming down" – i.e., when the subsequently becomes very tired.

Gonzales argues that the original indictment charged her with committing aggravated assault because she was intoxicated and under the influence of drugs (not that she was tired), thereby causing an accident which resulted in serious physical injury to the child.

Gonzales argues that the government constructively amended its theory of the case, claiming that at the time of the accident, Gonzales had come down from the effect of the drugs she had previously ingested, as a result of which she became sleepy. Gonzales asserts that, after an indictment has been returned, its charges may not be broadened except by the grand jury itself. *Stirone v. United States*, 361 U.S. 212 (1960); *Ex Parte Bain*, 121 U.S. 1, 7 S. Ct. 781, 30 L. Ed. 849 (1887) (court cannot permit a defendant to be tried on charges that are not made in the indictment against him).

Gonzales argues that a constructive amendment occurs when the terms of the indictment are effectively modified by the presentation of evidence or by actions of the court so that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment. *United States v. Thomas*, 274 F. 3d 655, 669 (2nd Cir. 2001). Further, an unconstitutional amendment of the indictment occurs when the charging terms are altered either literally or constructively, such as where the evidence offered at trial proves facts materially different from those alleged in the indictment. *See e.g. United States v. Helmsley*, 241 F. 2d 71 (2nd Cir. 1991); *United States v. Zingalo*, 858 F.2d 94 (2nd Cir. 1988). Gonzales further argues that a prejudicial variance, i.e., when the charging terms of the indictment are not changed but evidence offered at trial proves facts materially different from those alleged in the indictment, *United States v. Frank*, 156 F. 3d 332 (2nd Cir. 1998), is presented in this case and dismissal is appropriate.

The government asserts that "generally speaking, the return of an indictment tolls the statute of limitations with respect to the charges contained in the indictment." *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990); *United States v. Hickey*, 580 F.3d 922 (9th

Cir. 2009); *United States v. Italiano*, 894 F.2d 1280, 1282 (11th Cir.1990); *United States v. Sears, Roebuck & Co., Inc.*, 785 F.2d 777, 778 (9th Cir.1986), *citing United States v. Wilsey*, 458 F.2d 11, 12 (9th Cir.1972), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986).  Indeed, the Ninth Circuit has stated that:

> If a superseding indictment on the same charges is returned while a previous indictment is still pending, the tolling continues. *Italiano*, 894 F.2d at 1282.  An original indictment remains pending until it is dismissed or until double jeopardy or due process would forbid prosecution under it.

*Pacheco*, 912 F.2d at 305.[5]  The Court further stated:

> Notice to the defendant is the central policy underlying the statutes of limitation.  If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him.  That is, he knows that he will be called to account for certain activities and should prepare a defense.  *Italiano*, 894 F.2d at 1283.

*Pacheco*, 912 F.2d at 305.

The government asserts that the superceding indictment simply deleted a parenthetical reference to driving while under the influence, but did not change the charges or broaden the offense.  The government also asserts that Gonzales cannot claim that she lacked notice of the charge, as both the original and the superceding indictments charged the defendant with the same crime:  Assault Resulting in Serious Bodily Injury a violation of title 18, United States Code, Sections 113(a)(6) and 1153(a).[6]

The government asserts that Count One in each indictment substantially resemble each other.  Indeed, the government asserts that the substitution of the general provision in 18 U.S.C. § 113(a)(6) and 1153(a) for the more specific provision in 18 U.S.C. § 113(a)(6) and

---

[5]The Ninth Circuit has even discussed with apparent approval that other circuits permit the government to elect to proceed on "any pending indictment, whether it is the most recently returned superseding indictment or a prior indictment."  *Hickey*, 580 F.3d at 929.  In other words, if the government would like to proceed on the original indictment, it would appear to be permitted in the Ninth Circuit.

[6]However, the Ninth Circuit has stated that "[f]or purposes of the statute of limitations, the "charges" in the superseding indictment are defined not simply by the statute under which the defendant is indicted, but also by the factual allegations that the government relies on to show a violation of the statute."  *Italiano*, 894 F.2d at 1282.

1153(a) did not expand or broaden the charges against Gonzales, since all the elements of a section 113(a)(6) and 1153(a) are included in a section 113(a)(6) charge. *United States v. Sears, Roebuck & Co., Inc.*, 785 F.2d 777, 779 (9th Cir.1986); *United States v. Rose*, 570 F.2d 1358, 1363 (9th Cir.1978). Moreover, the potential penalty under law remains the same.[7]

The government argues that the Ninth Circuit has affirmed changing the theory of a case even during trial, as long as the theory is within what the grand jury charged. *See United States v. Wiseman*, 274 F.3d 1235, 1241-42 (9th Cir. 2001) (approving jury instruction that exceeded language of indictment). The Government points out that it has always alleged that Gonzales knowingly drove recklessly and wilfully, and caused serious bodily injury to T.B when she crashed the car into a tree.

During argument, counsel for Gonzales argued that the grand jury transcripts reflect that a totally different charge was presented from the initial grand jury to the second grand jury. However, during the initial grand jury proceedings, when a grand juror asked the testifying witness if it had been determined in the investigation whether Gonzales had passed out because of drugs in her system or because of some other health issue, the witness testified that he did not know if "that ever actually came out as far as the cause of that. We determined she was unconscious at the time of the crash, but whether the cause – specifically what caused that, I'm not sure." August 19, 2009, Grand Jury Transcript, pp. 10-11. In arguing that the government, to prove the original charge, would have to prove the alleged assault was completed by knowingly driving under the influence, defense counsel appears to rely on what is required to prove a state driving while under the influence charge. However, Gonzales was not charged with completing the assault by committing the elements of a state DUI; rather, the language used in the original indictment did not specify driving under the influence as defined by state law. The grand jury testimony confirms that the

---

[7]The Ninth Circuit has specifically stated that the potential for imposition of a greater penalty does not render the charges in a superseding indictment broader than those in the original indictment. *Sears*, 785 F.2d at 779.

government has been proceeding under a theory not limited to the elements of a state DUI offense. Neither indictment charges Gonzales pursuant to 18 U.S.C. § 1153(b) which relies on state law crimes in defining the alleged criminal conduct.

In distinguishing *United States v. O'Neill*, 463 F.Supp. 1205 (E.D.Pa. 1979), the *Italiano* court stated:

> We agree with the district court that the present case can easily be distinguished from *O'Neill*. In *O'Neill*, the superseding indictment involved a different false statement from the two false statements described in the first indictment. The first indictment stated that O'Neill falsely represented to the bank that the insurance policies submitted as security for the loan were in full force and effect. The second indictment stated that O'Neill falsely represented to the bank that the insurance policies submitted as security had a future cash surrender value and that they had been assigned to him.
>
> The *O'Neill* court found that "[t]he charge in the first indictment contains no mention of the specific misrepresentations charged in the second indictment. If anything, the first indictment would serve to draw the defendant's attention away from the misrepresentations alleged in the superseding bill." *Id*. at 1207. The court concluded that "[t]he original indictment therefore did not put the defendant on notice that he might face a revised indictment alleging two quite different misrepresentations." *Id*. at 1208.
>
> Unlike *O'Neill*, the second indictment in this case did not introduce any material new facts not found in the original indictment. For this reason, we conclude that the first indictment provided sufficient notice of the actions which allegedly constituted criminal conduct and of the type of evidence that the government would introduce at trial. We see no way in which any disparity between the first and second indictments hindered Italiano's understanding of the conduct for which he would be held accountable or his ability to prepare a defense for that conduct. *See Grady*, 544 F.2d at 601.

*Italiano*, 894 F.2d at 1285-86, *footnotes omitted*. Similarly, the superseding indictment in this case does not introduce any material new facts not found in the original indictment: each indictment alleges facts regarding the same incident, Gonzales committed an assault, Gonzales was driving a vehicle, and the child was injured as a result of Gonzales' conduct. Moreover, Gonzales was charged under the same statutory provisions in each indictment. Under each indictment, Gonzales was on notice that she would be called to account for the injury suffered by T.B. as a result of her driving and crashing on October 18, 2004. *See Pacheco*, 912 F.2d at 305, *citing Italiano*, 894 F.2d at 1283.

The Court finds the return of the original indictment continued to toll the statute of limitations because the charge was not impermissibly broadened by the Superseding Indictment.[8]

Accordingly, IT IS ORDERED:

1.      The Motion in Limine to Preclude Witness (Doc. 125) is DENIED.

2.      The Motion to Suppress (Doc. 80) is DENIED.

3.      The Motion to Dismiss Count One (Doc. 151) is DENIED.

DATED this 23rd day of December, 2010.

_____
Cindy K. Jorgenson
United States District Judge

---

[8]In effect, the surplusage has been "read out" of the original indictment, *see United States v. Aguilar*, 756 F.2d 1418 (9th Cir. 1985)